# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELISSA SOBOLESKI,  :
 :
      Plaintiff,  :   CIVIL ACTION NO.:   1:18-cv-30
 :
v.  :
 :
EDINBORO UNIVERSITY OF  :
PENNSYLVANIA and the  :
PENNSYLVANIA STATE SYSTEM OF  :
HIGHER EDUCATION,  :
 :
      Defendants.  :   **JURY TRIAL DEMANDED**

---

## COMPLAINT

---

NOW COMES Plaintiff, Melissa Soboleski ("Plaintiff"), by and through her undersigned

counsel, Elizabeth E. Deemer, Esquire, Sunshine R. Fellows, Esquire, Chloe C. Zidian, Esquire,

and The Levicoff Law Firm, P.C., and hereby files this civil action Complaint against Defendants,

Edinboro University of Pennsylvania ("Edinboro University") and the Pennsylvania State System

of Higher Education ("PASSHE") (collectively "Defendants"). In support of the claims set forth

herein, Plaintiff alleges and avers as follows:

### NATURE OF THE CASE

1.     This is an action for gender discrimination, retaliation, and unequal pay, brought

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the

Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); the Pennsylvania Equal Pay Law ("PEPL"),

1

{L0724882.1 }

43 P.S. § 336.3(a); and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.*

## PARTIES

2.      Plaintiff is an adult female individual who currently resides at 5458 Woodlawn Drive, Edinboro, Pennsylvania 16412.

3.      Plaintiff is and was at all times relevant hereto an employee of Defendants.

4.      Defendant PASSHE is a governmental agency located at 2986 North Second Street, Harrisburg, Pennsylvania 17110.

5.      Defendant Edinboro University is a comprehensive public university located at 219 Meadville Street, Edinboro, Pennsylvania 16444.

6.      Between the main campus in Edinboro, Pennsylvania and the Porreco College in Erie, Pennsylvania, Edinboro University has more than 6,000 enrolled graduate and undergraduate students.

7.      Edinboro University employs over 700 individuals, including academic and administrative staff.

8.      Edinboro University is one of the fourteen academic universities comprising PASSHE.

9.      As a member school of PASSHE, Edinboro follows PASSHE policies, including those related to employment discrimination, unlawful retaliation, fair pay, and Title IX compliance.

10.     PASSHE and its constituent universities are required to comply with each of the federal and state laws pursuant to which this action is brought.

2

## JURISDICTION AND VENUE

11.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

12.     Subject matter jurisdiction for Plaintiff's federal claims is proper under 28 U.S.C. § 1331, and the Court maintains supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

13.     Venue is proper before the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

15.     Plaintiff exhausted remedies through her attempts to utilize internal and organizational administrative processes.

16.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received a Notice of Right to Sue.

17.     Plaintiff timely filed this lawsuit within ninety days after her receipt of the aforementioned administrative Notice of Right to Sue.

3

## FACTS

### Facts Pertaining to Plaintiff's Professional Background

18.　　Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

19.　　Plaintiff graduated from Gannon University in 1993 with a bachelor's degree in education and a minor in sports management and health & physical education.

20.　　As an undergraduate student, Plaintiff enjoyed a distinguished career as a collegiate athlete.

21.　　Plaintiff was a four-year letter-winner with Gannon University's Lady Knights volleyball team from 1990 to 1993; Plaintiff's team had a record of 116-22 during that period, including three straight trips to the Elite Eight.

22.　　As a senior at Gannon University, Plaintiff served as her team's co-captain and earned a spot on the Hamot Classic All-Tournament team.

23.　　After earning her undergraduate degree, Plaintiff served as an assistant volleyball coach at Gannon University under Gerry Burbules-Vensel, a member of the Edinboro Athletic Hall of Fame.

24.　　Plaintiff then spent four seasons as the head volleyball coach at her alma mater, where she achieved a number of remarkable successes.

25.　　For instance, from 1995 through 1998, Plaintiff's Lady Knights reached the Great Lakes Intercollegiate Athletic Conference ("GLIAC ") playoffs twice, including a 21-14 record in her first season, with Gannon's women's volleyball reaching the National Collegiate Athletic Association ("NCAA") Division II playoffs.

4

26.    While at Gannon University, Plaintiff also served as the Senior Women's Administrator ("SWA")/Assistant Athletic Director.

27.    Plaintiff then served as the head volleyball coach at Mercyhurst University from 1999 through 2004.

28.    At Mercyhurst, Plaintiff inherited a volleyball program that had not had a winning season since 1993, had won only five games in four years in the GLIAC, and had recorded just 26 wins in five previous seasons.

29.    During her tenure at Mercyhurst, Plaintiff proceeded to lead the Lady Lakers to three winning seasons in six years at the helm, including a 21-8 finish in 2002, winning the Southern Division championship.

30.    Plaintiff was hired as head volleyball coach at Edinboro University on February 3, 2005.

31.    Now in her twelfth season as a head coach at Edinboro University, Plaintiff has demonstrated tremendous success and comes off one of the finest seasons in the school's history.

32.    Plaintiff has led Edinboro University's volleyball team to eight NCAA Division II Atlantic Region playoff berths, along with trips to the Pennsylvania State Athletic Conference ("PSAC") playoffs seven times.

33.    Plaintiff possesses a 256-141 record as Edinboro University's head volleyball coach, ranking second all-time in career wins.

34.    Last year, Edinboro University reached the 30-win mark for the second time under Plaintiff and just the sixth time in the school's history.

35.    Plaintiff is the winningest volleyball coach in Edinboro University's history.

{L0724882.1 }

36.     Plaintiff completed her most successful season last year, with a spot in the NCAA Division II Sweet Sixteen.

## Facts Pertaining to Edinboro University's Relevant Athletic Programs

37.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

38.     Edinboro University offers seventeen varsity sports: women's basketball, cross country, lacrosse, volleyball, swimming, soccer, softball, tennis, and indoor and outdoor track and field, and men's football, wrestling, cross country, basketball, swimming, tennis, wheelchair basketball and outdoor track and field.

39.     Athletic teams at Edinboro University are tiered.

40.     Tier-1 teams are provided with the highest level of funding and are considered the most competitive.

41.     Tier-1 coaches thus tend to receive the highest compensation.

42.     Indeed, Bruce Baumgartner, Edinboro University's Director of Athletics, has stated to the university's SWA that Tier-1 coaches require higher compensation.

43.     Tier-1 teams at Edinboro University consist of men's basketball, women's basketball, men's wrestling, and women's volleyball.

44.     Plaintiff is the sole female head coach of a Tier-1 athletic team at Edinboro University.

## Facts Pertaining to Gender-Based Pay Disparity within Edinboro University's Athletic Programs

45.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

6

46.     Between 2010 and 2016, Plaintiff received salary increases totaling $9,676.41.

47.     By contrast, during the same time period, Edinboro University's male Tier-1 head coaches were awarded salary increases averaging more than three and one-half times greater than those received by Plaintiff.

48.     At the start of 2016, Plaintiff's annual salary was $64,344.34.

49.     That same year, the other three Tier-1 head coaches, who are all male, were paid $74,959.44, $104,705.78, and $120,872.03, respectively.

50.     Plaintiff thus earned nearly fifteen percent less than her closest male counterpart and thirty-nine percent and forty-seven percent less than her other two male counterparts.

51.     Plaintiff's current annual salary is $73,251.00.

52.     The current salary of Edinboro University's head men's basketball coach, who is male, is $78,561.00.

53.     Edinboro University's head men's basketball coach was hired with no head coaching experience.

54.     By contrast, Plaintiff was hired with over a decade's worth of head coaching experience.

55.     The current salary of Edinboro University's head women's basketball coach, who is male, is $110,198.00.

56.     The current salary of Edinboro University's head men's wrestling coach, who is male, is $130,880.00.

{L0724882.1 }

57.     On information and belief, Edinboro University's head men's wrestling coach is slated to receive a salary increase in the amount of $3,000.00, which will bring his annual compensation to $133,880.00.

58.     The head coach of Edinboro University's football team, a Tier-2 sport, receives higher compensation than Plaintiff.

59.     The current salary of Edinboro University's head men's football coach, who is male, is $81,625.00.

60.     On information and belief, Edinboro University's head men's football coach is slated to receive a salary increase in the amount of $7,875.00, which will bring his annual compensation to $89,500.00.

61.     Edinboro University contributes over nine percent of each coach's annual salary towards his or her retirement.

62.     As such, Plaintiff's male counterparts receive additional contributions to their retirement savings that Plaintiff does not receive.

### Facts Pertaining to Plaintiff's Complaints About Gender-Based Pay Disparity at Edinboro University

63.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

64.     In January 2015, Plaintiff raised concerns during her annual evaluation about the disparity in pay between her and her male counterparts to her direct supervisor, Athletics Director Baumgartner.

65.     In his role, Baumgartner recommends salaries and compensation adjustments for all Athletic Department employees, including Plaintiff.

8

{L0724882.1 }

66.     Baumgartner also is the designated individual to receive complaints concerning pay disparity, as he holds the title of Deputy Title IX Coordinator for Gender Equity in Athletics.

67.     Indeed, Edinboro University's website provides that "[i]ndividuals with concerns about gender equity in athletics are encouraged to contact the Deputy Title IX Coordinator for Gender," referring to Baumgartner.

68.     When Plaintiff raised concerns to Baumgartner in January 2015 about the disparity in pay between her and her male counterparts, Baumgartner's response was to ignore her request for a review of the situation.

69.     Plaintiff followed up with Baumgartner regarding the status of her inquiry in April 2015, and was informed that he had not yet reviewed the situation.

70.     In January 2016, during her annual evaluation, Plaintiff again raised concerns about pay disparity and questioned why her earlier complaint had not yet been investigated.

71.     In March 2016, Baumgartner finally convened a committee to examine pay disparity in athletics.

72.     Baumgartner designated himself as the chair of this committee, despite concerns expressed by numerous individuals within the athletic department.

73.     It was agreed during conversations between Edinboro University's Associate Athletic Director and SWA that it was inappropriate for Baumgartner to be a committee member and that he certainly should not serve as the chairperson.

74.     Plaintiff was advised by Edinboro University's SWA that she had spoken to Baumgartner, telling him that he should not chair the committee, but he refused to step down.

9

75.     Plaintiff was informed that Baumgartner had commented that the committee had been formed for the purpose of confirming the appropriateness of the pay adjustments as determined by him.

76.     In light of concerns surrounding Baumgartner's motivations in appointing himself to chair the committee tasked with investigating gender-based pay disparity, on April 8, 2016, three Edinboro University coaches, including Plaintiff and two male coaches of women's athletic teams, filed a formal Social Equity Complaint with Edinboro University's Director of Social Equity and Title IX Coordinator.

### Facts Pertaining to Edinboro University's and PASSHE's Investigation of Gender-Based Pay Disparity Complaints

77.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

78.     During the summer of 2016, Edinboro University's Director of Social Equity and Title IX Coordinator conducted an internal Title IX investigation.

79.     After Edinboro University's Director of Social Equity and Title IX Coordinator submitted his findings to PASSHE, it was determined that PASSHE would conduct a separate investigation.

80.     PASSHE's independent investigation was conducted in the fall of 2016 and concluded with findings that Plaintiff's gender-based pay disparity complaints had merit.

81.     Edinboro University's Director of Social Equity and Title IX Coordinator certified the results and submitted a series of recommendations to the President of Edinboro University concerning changes that should be implemented immediately, including substantial raises for Plaintiff and other coaches.

{L0724882.1 }

82. The recommendations of Edinboro University's Director of Social Equity and Title IX Coordinator were approved by the President of Edinboro University.

83. Nonetheless, after several months, no adjustments had been made.

84. As a result, Plaintiff was forced to hunt down further information concerning the status of Edinboro University's response to her complaint, which had already been verified as having merit.

85. Plaintiff was later informed that a third investigation would be conducted.

86. Plaintiff was then awarded a meager salary adjustment, far lower than the increase initially recommended by Edinboro University's Director of Social Equity and Title IX Coordinator and approved by the President of Edinboro University.

87. Upon information and belief, the paltry adjustment provided to Plaintiff was designed to propitiate and quiet her legitimate complaints concerning gender-based pay disparity.

88. Despite her many outstanding professional successes, at present, Plaintiff's salary remains substantially lower than all three of her male counterparts; Plaintiff's salary is also lower than at least one male Tier-2 coach.

89. Since submitting her first complaint regarding gender-based pay disparity at Edinboro University, the disparity between Plaintiff's compensation and that of her male counterparts has actually increased.

90. Plaintiff has repeatedly been informed that there is an overall lack of funding for athletics at Edinboro University.

{L0724882.1 }

91.     As a result, Plaintiff has been denied equitable salary increases, scholarship funding for her program has been restricted and/or denied, and her ability to recruit student athletes has been constrained.

92.     Nonetheless, and despite its representations about inadequate funding, Edinboro University's football coach and wrestling coach, both male, are currently slated to receive upward salary adjustments.

**Facts Pertaining to Unlawful Retaliatory Conduct Directed Toward Plaintiff**

93.     Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

94.     Immediately following the filing of the April 8, 2016 Social Equity Complaint, Baumgartner began approaching Plaintiff in a threatening manner with the intent of intimidating her, referring to the Social Equity Complaint as "very interesting," "full of inaccuracies" and bringing it up repeatedly.

95.     At one point, Baumgartner came to Plaintiff's office to discuss equipment purchases and, while standing in her doorway, commented on how troubling the Social Equity Complaint was, causing Plaintiff to feel trapped and uncomfortable.

96.     Baumgartner went on to criticize the content and nature of the Social Equity Complaint, saying that he could not believe it was filed under Title IX because he had never seen such complaints under that umbrella.

97.     When Plaintiff later asked Baumgartner for time sensitive information concerning student athlete housing, he refused to provide assistance.

{L0724882.1 }

98. Baumgartner sent Plaintiff e-mail correspondence reneging on an international waiver, which was another apparent unfair reaction to her filing of the Social Equity Complaint.

99. Plaintiff notified Edinboro University's SWA that Baumgartner was consistently going out of his way to make Plaintiff uncomfortable as a result of her participation in the filing of the Social Equity Complaint.

100. Edinboro University's SWA advised Baumgartner in writing to stop talking about the Social Equity Complaint because it was causing a "rift" in the athletic department.

101. In the following months, Baumgartner refused to answer Plaintiff's questions about routine athletic department matters and generally ignored her requests for information.

102. Baumgartner has approached Plaintiff in public and raised inappropriate topics, making it evident that he intended to punish the volleyball team due to Plaintiff's participation in the Social Equity Complaint.

103. In May 2017, Edinboro University's President called a meeting, at which time the university's Athletic Administrative Coordinator stated that there were three people in the room with an "agenda" and a goal of "personally attacking" Baumgartner.

104. It was clear to everyone in the room that the Athletic Administrative Coordinator was referring to Plaintiff and the other two individuals who filed the initial Social Equity Complaint.

105. The retaliation Plaintiff experienced as a result of filing the Social Equity Complaint was not felt by the two male coaches who also signed it.

106. After Edinboro University learned that Plaintiff had retained legal counsel to address the university's ongoing discriminatory and retaliatory conduct, threats were made to

13

{L0724882.1 }

Plaintiff's program, and Baumgartner has attempted to impede Plaintiff's ability to continue to do her job.

107.   By way of example, on Thursday, June 12, 2017, within five hours after Edinboro University received correspondence from Plaintiff's lawyers indicating Plaintiff's intention to seek redress for the university's ongoing discriminatory conduct, Plaintiff was informed by Baumgartner that she would not be permitted to attend a previously scheduled recruitment trip.

108.   Plaintiff's recruitment efforts represent a significant aspect of her job responsibilities as a head coach and are critical to the ongoing success of her program; Plaintiff had never previously been denied the ability to perform that function of her job.

109.   Following the filling of her Charge of Discrimination with the EEOC on July 20, 2017, Baumgartner continued and increased his pattern of retaliation against Plaintiff.

110.   Earlier this year, Plaintiff requested passes for all home athletic events; although Plaintiff has received such passes without issue for the past several years, her most recent request was ignored for a substantial period of time, and she later received passes for volleyball events only.

111.   Edinboro University staff have failed and/or refused to play the National Anthem for Plaintiff's team.

112.   On August 8, 2017, Plaintiff was informed that Baumgartner's secretary had filed an internal complaint against Plaintiff for a purported misuse of funds, and that she would be subject to an internal investigation.

{L0724882.1 }

113. The funds in question had already been approved by Edinboro University's Associate Athletic Director, and were being used in a manner consistent with other coaches' use of funds.

114. Regardless, Plaintiff was the only coach subject to a complaint and investigation.

115. Baumgartner was aware of the complaint ahead of its filling and on information and belief, Plaintiff avers that Baumgartner orchestrated the complaint.

116. The complaint levied against Plaintiff by Baumgartner's secretary was not maintained as confidential.

117. Plaintiff ultimately was cleared of any wrongdoing; nonetheless, her colleagues within the athletic department continue to ostracize her as a result of the accusations.

118. Plaintiff has also been shunned by her peers as a result of her gender disparity complaints as described above.

119. On August 8, 2017, during a budgetary meeting in which another staff member was present, Baumgartner sarcastically stated to Plaintiff, "Missy, I know you think I'm retaliating against you."

120. Since Plaintiff filed her EEOC charge, Baumgartner has openly walked around the athletic department offices complaining that he was going to get fired due to Plaintiff's EEOC charge.

121. Plaintiff continues to be subject to retaliation by Baumgartner as a result of her protected conduct as described above.

122. Plaintiff has been subject to ongoing hostility, which has been expressed openly, *inter alia*, during staff meetings, by her peers as a result of her gender equity complaints.

15

**Additional Facts Demonstrating Gender-Based Disparate Treatment and/or Retaliation**

123.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

124.    Edinboro University treats male athletic department employees more favorably than female employees.

125.    Edinboro University treats athletic department employees who have not engaged in protected activity more favorably than employees who have engaged in protected conduct.

126.    By way of example, on information and belief, Baumgartner makes fundraising trips for Edinboro University; on such trips he appears at speaking engagements for which he receives compensation.

127.    Thus, on information and belief, Baumgartner does exactly what his secretary accused Plaintiff of doing (allegations which were deemed false), yet Baumgartner was never made the subject of any complaint or investigation as the result of his conduct.

128.    By way of further example, on one occasion, former Edinboro University football coach Scott Browning walked into an athletic facility at Edinboro University, accompanied by his son and a student athlete.

129.    As they walked in, they looked into the front office and observed the Athletic Administrative Coordinator in a compromising position with a woman, not his wife.

130.    Browning told his son and the student athlete to just keep walking.

131.    Browning later reported the incident to Baumgartner.

{L0724882.1 }

132.    On information and belief, the Athletic Administrative Coordinator was not subject to any verbal or written counseling as a result of this event, and the incident was not documented to his personnel file.

133.    On another occasion, Edinboro University women's soccer head coach was in the Athletic Administrative Coordinator's office attempting to address an issue, and the Athletic Administrative Coordinator physically shoved him.

134.    As the women's soccer head coach was walking out of the building to report the incident to Edinboro University Police and Safety, Baumgartner intercepted him.

135.    The women's soccer head coach never filed a complaint relative to the Athletic Administrative Coordinator's conduct, and on information and belief, the incident was never investigated or recorded to the Athletic Administrative Coordinator's employment file.

136.    Coaches for men's sports enjoy large office suites together with their staff, while coaches for the women's teams have individual offices located some distance away from their assistant coaches, which causes a daily hardship and inconvenience.

## COUNT ONE
### Gender Discrimination in Violation of Title VII

137.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

138.    Defendants are "employers" as defined by Title VII at 42 U.S.C. § 2000e(b).

139.    Plaintiff is an "employee" as defined by Title VII at 42 U.S.C. § 2000e(f).

140.    Plaintiff is a member of a class protected by Title VII.

141.    Plaintiff is and at relevant times hereto was qualified to perform her job functions.

17

142.    Defendants have subjected and continue to subject Plaintiff to unlawful discrimination in violation of Title VII, *inter alia,* by paying her considerably less than her male counterparts for equal or substantially equivalent work.

143.    Defendants' decision to pay Plaintiff less than her male counterparts is and was motivated by Plaintiff's gender.

144.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

145.    Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, compensatory damages, punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT TWO
### Retaliation in Violation of Title VII

146.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

147.    Plaintiff engaged in conduct protected under Title VII by making complaints regarding gender-based disparate treatment, specifically gender-based pay disparities within Edinboro University's athletic department.

148.    As a direct and proximate result of Plaintiff's protected complaints, Defendants, by and through their employees and agents, subjected Plaintiff to an ongoing pattern of retaliation, as described at length herein.

18

149.    The retaliatory actions described herein have negatively impacted Plaintiff's program, and have negatively impacted Plaintiff's ability to perform the essential functions of her position as head women's volleyball coach.

150.    A reasonable employee would have found the retaliatory actions described herein materially adverse in that they would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

151.    Plaintiff has complained to Edinboro University and PASSHE officials concerning the retaliatory conduct alleged herein, but adequate and appropriate remedial action has not been taken.

152.    As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

153.    Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, compensatory damages, punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT THREE
### Unequal Pay in Violation of the EPA and the PEPL

154.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

155.    Defendants are "employers" subject to the EPA and the PEPL within the meaning of 29 U.S.C. § 203(d) and 43 P.S. § 336.2(b).

156.   Plaintiff is an "employee" as defined by 29 U.S.C. § 203(e)(2) and 43 P.S. § 336.2(a).

157.   Plaintiff is female.

158.   Plaintiff's comparators, Edinboro University's head women's basketball coach, head men's basketball coach, head men's wrestling coach, and head men's football coach, are male.

159.   Defendants discriminated against Plaintiff by paying her lower compensation on the basis of sex for equal work.

160.   Plaintiff performed work which required at least an equal, if not higher, degree of skill, effort, and responsibilities, and was performed under similar working conditions, as the male coaches identified as comparators.

161.   Defendants' payment of unequal compensation to Plaintiff was not pursuant to a seniority system, merit system, a system which measures earnings by quantity or quality of production, or any factor other than sex.

162.   Defendants' actions were willful, knowing, wanton, malicious, reckless and intentional, and thus warrant the imposition of liquidated damages.

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, liquidated damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT FOUR
### Retaliation in Violation of the EPA

163.   Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

20

{L0724882.1 }

164.    Pursuant to 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, it is unlawful for any person: "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

165.    The FLSA's anti-retaliation provision is applicable to retaliation claims under the EPA.

166.    Plaintiff engaged in activity protected under the EPA, in that she made complaints to Defendants about the disparity in her pay.

167.    Defendants failed to adequately or properly address Plaintiff's complaints about the disparity in her pay.

168.    Defendants, through its agents and employees, subjected Plaintiff to an ongoing pattern of retaliation as a direct and proximate result of her protected activity.

169.    The retaliatory actions described herein are and were materially adverse.

170.    Plaintiff has complained to Edinboro University and PASSHE officials concerning such retaliatory conduct, but adequate remedial action has not been taken.

171.    As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

172.    Defendants' actions were willful, wanton, malicious, reckless and intentional, and thus warrant the imposition of punitive damages.

{L0724882.1 }

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, compensatory damages, punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT FIVE
## Discrimination in Violation of Title IX

173.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

174.    Defendants are entities governed by Title IX because they are public education programs which receive financial assistance from the United States government.

175.    Title IX prohibits gender discrimination in education programs or activities that receive federal financial assistance; employment discrimination comes within this prohibition.

176.    Title IX authorizes private parties to seek monetary damages for intentional violations of Title IX.

177.    Defendants intentionally discriminated against Plaintiff on the basis of sex in violation of Title IX by denying her certain benefits of employment and discriminating against her by:  (a) paying her lower salary and benefits than similarly situated male employees; (b) awarding her smaller and less frequent increases in salary and benefits than similarly situated male employees; and (c) forcing her to work under terms, conditions and privileges which are less beneficial and desirable and more onerous and difficult than those of similarly situated male employees.

178.    Defendants created an inherently unequal educational environment fueled by gender-based discrimination.

{L0724882.1 }

179.    Defendants, through their actions and omissions alleged herein, are guilty of deliberate indifference to the unequal treatment of females.

180.    Defendant's deliberate indifference was the proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, compensatory damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## COUNT SIX
### Retaliation in Violation of Title IX

1.    Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

2.    Retaliation against a person because that person has complained of sex discrimination is a form of intentional sex discrimination encompassed by Title IX's private cause of action.

3.    Plaintiff engaged in protected activities under Title IX when she complained about the unequal treatment of females in athletics.

4.    As a direct and proximate result of Plaintiff's protected activities, Defendants subjected Plaintiff to an ongoing pattern of retaliation, as described at length herein.

5.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered economic harm, emotional distress, mental anguish, and loss of reputation.

WHEREFORE, Plaintiff Melissa Soboleski hereby demands relief in the form of economic damages, compensatory damages, punitive damages, equitable relief, attorneys' fees and costs, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melissa Soboleski requests that the Court order Defendants:

a. to immediately cease and desist from engaging in discriminatory practices as prohibited under Title VII, Title IX, the EPA, and the PEPL;

b. to immediately increase Plaintiff's salary to an amount commensurate with the salaries earned by her male counterparts;

c. to guarantee on-going, annual salary increases and/or bonuses for Plaintiff in amounts comparable to her male counterparts;

d. to pay Plaintiff appropriate back pay and benefits, including, but not limited to, retirement contributions, in a liquidated amount, with interest;

e. to pay Plaintiff appropriate damages for her pain, suffering, and emotional distress;

f. to pay Plaintiff appropriate punitive damages;

g. to pay Plaintiff's reasonable attorneys' fees and costs incurred to date; and

h. to make such other relief as the Court deems appropriate.

{L0724882.1 }

Date: <u>January 24, 2018</u>

By: _____
Elizabeth E. Deemer, Esquire
EDeemer@LevicoffLaw.com
Pa. I.D. #: 58232
Sunshine R. Fellows, Esquire
SFellows@LevicoffLaw.com
Pa. I.D. #: 87632
Chloe C. Zidian
CZidian@LevicoffLaw.com
Pa. I.D. #: 322849
The Levicoff Law Firm, P.C.
4 PPG Place, Suite 200
Pittsburgh, PA 15222
412-434-5200 (ph)
412-434-5203 (fax)

*Counsel for Plaintiff*

{L0724882.1 }